SHORTESS, Judge.
Ernest Dickey (Dickey) was employed by the Louisiana State University Medical Center, Shreveport (appellant) on December 1, 1981, as a Police Officer II and was serving with permanent status. On that date he was verbally suspended from his position. On December 7, 1981, Colonel William Boden, Director of the University Police Department, and James R. Plai-sanee, Director of Personnel, gave Dickey written notice of his termination effective *215 December 8, 1981. The cause for termination as articulated in the notification was that Dickey attempted to take two pounds of coffee from appellant’s main kitchen on December 1, 1981, at 2:45 a.m. without authorization and in violation of specific written orders forbidding officers to enter the hospital cafeteria after closing.
A full public hearing was held before a Civil Service Commission referee pursuant to La. Const, art. X, § 12(A), as amended by La. Acts 1982, No. 883, and adopted as a constitutional amendment effective October 15, 1982. After hearing the evidence, the referee made written findings of facts and conclusions of law and ordered that Dickey be reinstated to his position with full back pay, emoluments of office, etc. Appellant has brought this appeal and argues that the referee was clearly wrong in ordering Dickey reinstated.
In Williams v. Department of Public Safety, Etc., 415 So.2d 543, 544 (La.App. 1st Cir.1982), this court stated:
The decisions of the Commission are subject to review on any question of law or fact. La. Const. (1974), Art. 10, § 12; Gallardo v. Department of Fire, 399 So.2d 626 (La.App. 4th Cir.1981); Dundy v. Louisiana State University, etc., 394 So.2d 650 (La.App. 1st Cir.1980); Sanders v. Dept. of Health & Human Resources, 394 So.2d 629 (La.App. 1st Cir. 1980) writ denied 399 So.2d 602 (La.1981). It is well established that the standard of review in cases on appeal from the Commission is the same standard used in reviewing decisions from the trial courts. The factual determinations of the Commission will not be set aside unless they are shown to be manifestly erroneous. Department of Public Safety v. Rigby, 401 So.2d 1017 (La.App. 1st Cir.1981) writ denied 406 So.2d 626 (La.1981); Gallardo, supra; Albert v. Louisiana State Penitentiary, 396 So.2d 340 (La.App. 1st Cir.1981); Michel v. Department of Public Safety, Alcoholic Beverage Control Board, 341 So.2d 1161 (La.App. 1st Cir. 1976) writ refused 343 So.2d 1078 (La. 1977). Thus, great weight is given to the factual conclusions of the trier of fact. Sanders, supra; Arnold v. New Orleans Police Dept., 383 So.2d 810 (La.App. 4th Cir.1980) writ denied 385 So.2d 274 (La. 1980); Hebert v. Dept. of Police, 362 So.2d 1190 (La.App. 4th Cir.1978).
We have carefully reviewed this entire record and find that the referee’s findings of fact as set forth below are not manifestly erroneous.
FINDINGS OF FACT
1. On April 22, 1980, L.M. Atkins, Acting Chief of the University Police Department, issued a memorandum to all personnel on the 10:00 p.m. to 6:00 a.m. shift. The memorandum states that under no circumstances is any officer to enter the Hospital Cafeteria after the cafeteria is closed for the night.
2. On November 24, 1981, and December 2, 1981, Lois M. Jackson, Director of Nutritional Services, sent memoranda to Colonel Bill Boden, Director of Security, notifying Colonel Boden that packages of coffee were being removed from the Main Kitchen on a regular basis between the hours of 11:00 p.m. and 6:00 a.m. Ms. Jackson requested Colonel Boden’s assistance in maintaining the security of the kitchen.
3. At midnight on December 1, 1981, Colonel Boden and Lt. Colonel Atkins entered the main kitchen to set up a stake out of the area.
4. Between 2:00 a.m. and 2:30 a.m. Colonel Boden and Lt. Colonel Atkins heard someone enter the kitchen area through Ms. Jackson’s office. They observed appellant walk from Ms. Jackson’s office to the area of the refrigerators. They heard two refrigerator doors being opened and closed, then saw appellant walk back into Ms. Jackson’s office. Appellant opened and closed two desk drawers, walked out of the office, unlocked a grey steel cabinet, removed some articles, relocked the cabinet, returned the keys to the desk drawer and started to exit the kitchen area.
*216 5. Colonel Boden and Lt. Colonel Atkins stopped appellant at the door leading out of the kitchen area into the hospital hallway. Appellant first denied that he was carrying anything, then showed two one-pound bags of coffee.
6. Subsequent to Atkins’ memorandum of April 22, 1980, security officers on the 10:00 p.m. to 6:00 a.m. shift continued to enter the Hospital Cafeteria and get packages of coffee at the request of doctors and nurses working on the night shift.
7. Sergeant Eustis Thornhill, shift supervisor on appellant’s shift, had authorized appellant and other officers on the shift to get coffee from the cafeteria when nurses requested it. Sgt. Thorn-hill understood that packages of coffee were kept under the coffee urns on the cafeteria serving lines and expected officers to get coffee from that location. However, testimony established that officers under Sgt. Thornhill’s supervision had occasionally obtained coffee from other locations within the cafeteria-kitchen area. .
8. Sgt. Thornhill received a six-day suspension following the investigation surrounding appellant’s apprehension on the morning of December 2, 1981.
9. Appellant was unable to establish that on December 1, 1981, he was asked to get coffee for medical personnel. However, testimony established that appellant had been asked by medical personnel to get coffee on numerous occasions and that on more than one occasion, appellant had brought two packages of coffee to the Emergency Room medical staff in order to avoid having to make two trips.
10. No evidence was presented to show that appellant intended to remove the coffee for his personal use.
Appellant argues that the referee erred in finding that no evidence was presented to show that Dickey intended to remove the coffee for his own personal use. Boden and his assistant, Louis Atkins, stopped Dickey as he exited the cafeteria. No one will ever know for sure what his destination was. Dickey testified that he got the coffee for nurse Catherine Barron. She testified that she did not ask Dickey to get the coffee for her on the night in question. No other evidence was presented on this point.
Appellant also argues that the referee erred in finding that Dickey’s conduct did not constitute theft because consideration should have been given to his suspicious and guilty conduct when he was apprehended by Boden, his attempt to use perjured testimony, and the manner in which he obtained the coffee from the cafeteria.
The evidence indicates that Barron had asked Dickey on many occasions in the past to get coffee for her. Dickey denied asking Barron to lie. He testified that he asked her what her testimony would be. Dickey also had an explanation for his conduct in the cafeteria before and after being apprehended, which differed from that of Boden and Atkins. The referee obviously attached more weight to Dickey’s version than to the version of appellant’s witnesses.
Again, we must emphasize that our role as an appellate court is not to substitute our judgment for that of the trier of fact but to review its decision and reverse only if we find that the judgment was clearly wrong. In this case we cannot say, based on the totality of the record, that the referee was clearly wrong in ordering Dickey reinstated.
For the above reasons, the decision of the Civil Service Commission’s referee is affirmed at appellant’s costs.
AFFIRMED.